```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
UNITED STATES OF AMERICA,                                        :
                                                                 :
            -v-                                                  :      22-cr-251 (LJL)
                                                                 :
RAFAEL MARTINEZ,                                                 :      MEMORANDUM &
                                                                 :         ORDER
                                    Defendant.                   :
                                                                 :
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/17/2023

LEWIS J. LIMAN, United States District Judge:

Defendant Rafael Martinez ("Defendant" or "Martinez") moves to dismiss Count One of the superseding indictment against him. Dkt. Nos. 32, 51. The motion is denied without prejudice to Defendant making a Rule 29 motion for judgment of acquittal after the close of the Government's evidence and after the close of all evidence.

## BACKGROUND

On January 19, 2023, a grand jury sitting in the Southern District of New York returned a superseding indictment ("Superseding Indictment") charging Defendant in five counts. As relevant here, Count One charges Martinez with wire fraud, in violation of 18 U.S.C. § 1343, as follows:

> From in or about April 2020 through at least in or about February 2022, in the Southern District of New York and elsewhere, RAFAEL MARTINEZ, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, which affected a financial institution, to wit, MARTINEZ engaged in a scheme to fraudulently obtain millions of dollars in capital from an insurance company (the "Company") and the Federal Reserve Bank of San Francisco, in order to issue loans through the Paycheck Protection Program (the "PPP"), and thereby to fraudulently earn PPP lender fees, through false and fraudulent pretenses, representations, and documents, including

by making false statements to the United States Small Business Administration (the "SBA") in order to obtain approval for MARTINEZ's company, MBE Capital Partners, LLC ("MBE"), to become a non-bank PPP lender.

Dkt No. 50 ¶ 1.

Defendant moved on December 2, 2022, to dismiss Count One of the original indictment. Dkt. No. 32. He has renewed his motion addressed to the Superseding Indictment and has submitted a supplemental letter in support of dismissal and a reply letter in support of dismissal. Dkt. Nos. 51, 53. The Government opposes the motion. Dkt. No. 52.

## DISCUSSION

Pursuant to Federal Rule of Criminal Procedure 7(c)(1), an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Cr. P. 7(c)(1). "'A defendant faces a high standard in seeking to dismiss an indictment, because an indictment need provide the defendant only a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" *United States v. Pham*, 2022 WL 993119, at *3 (S.D.N.Y. Apr. 1, 2022) (Nathan, J.) (quoting *United States v. Post*, 950 F. Supp. 2d 519, 527 (S.D.N.Y. 2013)). The Court "accept[s] as true all of the allegations of the indictment." *United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985). "[A]n indictment need 'do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'" *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (quoting *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000)). "An indictment 'need not be perfect, and common sense and reason are more important than technicalities.'" *Id.* (quoting *United States v. De La Pava,* 268 F.3d 157, 162 (2d Cir. 2001)).

"'[T]he essential elements of a mail [or wire] fraud violation are (1) a scheme to defraud, (2) money or property [as the object of the scheme], and (3) use of the mails [or wires] to further the scheme.'" *Fountain v. United States*, 357 F.3d 250, 255 (2d Cir. 2004) (quoting *United*

*States v. Dinome*, 86 F.3d 277, 283 (2d Cir. 1996) (internal citation and quotation marks omitted)).[1]

Defendant argues that Count One fails to allege the federal crime of wire fraud because "the true object of the alleged deception was government information or imprimatur." Dkt. No. 51 at 5. He relies upon the Supreme Court decisions in *Cleveland v. United States*, 531 U.S. 12 (2000), *Kelly v. United States*, 140 S. Ct. 1565 (2020), and *United States v. Loughrin*, 573 U.S. 351 (2014). In essence, he argues that a scheme of fraud whose object is to obtain a license from a governmental entity does not violate the federal wire fraud statute because regulatory approval does not constitute "money or property" within the meaning of that statute. Dkt. No. 51 at 5. Martinez further argues that the allegation that he used the fraudulently obtained approval to obtain money from the Company and the Federal Reserve Bank of San Francisco is too attenuated to constitute wire fraud. *Id.*

In *Cleveland v. United States*, 531 U.S. 12 (2000), the Supreme Court held that "[s]tate and municipal licenses [are not] 'property' for purposes of § 1341, in the hands of the official licensor." *Id.* at 15; *see also id.* at 20 ("The question presented is whether, for purposes of the federal mail fraud statute, a government regulator parts with 'property' when it issues a license."). The decision rested on the proposition that "the State's core concern [in the licenses] [wa]s regulatory." *Id.* The Government did not allege that the defendant "defrauded the State of any money to which the State was entitled by law." *Id.* at 22. It did "not suffice . . . that the object of the fraud may become property in the recipient's hands; for purposes of the mail fraud statute, the thing obtained must be property in the hands of the victim." *Id.* at 15; *see also Kelly*,

---

[1] The mail fraud and the wire fraud statutes are identical in all relevant respects. *See Fountain*, 357 F.3d at 253.

140 S. Ct. at 1572 (characterizing *Cleveland* as having held that "a scheme to alter . . . regulatory choice is not one to appropriate the government's property"); *Pasquantino v. United States*, 544 U.S. 349, 357 (2004) (characterizing *Cleveland* as having turned on the fact that "the interest in choosing particular licensees was 'purely regulatory'"); *United States v. Middendorf*, 2018 WL 3443117, at *8 (S.D.N.Y. July 17, 2018) ("*Cleveland* holds that permission to engage in regulated conduct is a regulatory interest in the hands of the government which transmutes into a property interest in the hands of a private party."). In *Kelly*, the Supreme Court stated that the federal wire fraud statute targets only "fraudulent schemes for obtaining property." 140 S. Ct. at 1568; *see also id.* at 1571 ("The wire fraud statute . . . prohibits only deceptive 'schemes to deprive [the victim of] money or property.'"). The receipt of property "must play more than some bit part in a scheme: It must be an object of the fraud." *Id.* at 1573 (internal citations and quotation marks omitted).

      Count One does not run afoul of *Cleveland* or *Kelly*. The Second Circuit has held that to prove wire or mail fraud, "the party whose money or property is the object of the scheme [need not be] the same party whom a fraudster seeks to deceive." *United States v. Greenberg*, 835 F.3d 295, 306 (2d Cir. 2016); *see United States v. Ying Wai Phillip Ng*, 578 F. App'x 38, 39–40 (2d Cir. 2022) (vacating and remanding order dismissing information for consideration of whether scheme to assist Chinese clients to cheat on written test for commercial driver's license defrauded clients of money or property); *United States v. Weigand*, 482 F. Supp. 3d 224, 237 (S.D.N.Y. 2020), *as corrected* (Sept. 2, 2020) ("Five courts of appeals, including the Second Circuit, have concluded that the wire fraud statute does not 'require convergence between the parties intended to be deceived and those whose property is sought in a fraudulent scheme.'"

(quoting *United States v. Greenberg*, 835 F.3d 295, 306-07 (2d Cir. 2016))).  The Circuit thus has rejected the convergence theory.

The Superseding Indictment falls squarely within what is permitted under *Greenberg* and is not foreclosed by *Cleveland*.  Count One does not allege that Defendant deprived the SBA of money or property in the form of permission to act as a non-bank lender.  Rather, it alleges that Martinez engaged in a scheme "to fraudulently obtain millions of dollars of capital from an insurance company . . . and the Federal Reserve Bank of San Francisco."  Dkt No. 50 ¶ 1.  It is irrelevant that one of the means through which Martinez committed his fraud was to make false statements to the SBA.  To use the language of the Supreme Court in *Kelly*, as charged in the Superseding Indictment, the receipt of "millions of dollars in capital" from the Company and the Federal Reserve Bank of San Francisco and was not "an incidental byproduct of the scheme." *Kelly*, 140 S. Ct. at 1573.  It was the "'object of the fraud.'"  *Id.* (quoting *Pasquantino*, 544 U.S. at 355).

Nor is Count One of the Superseding Indictment invalid under *Loughrin*, 573 U.S. 351.  In that case, the Supreme Court considered the question of whether the Government would have to prove that the defendant intended to defraud a bank to prove the federal crime of bank fraud. *Id.* at 353.  The Court answered that question in the negative, concluding that it sufficed that the defendant intended to deceive a third party in order to obtain money or property owned by a bank.  *Id.* at 363–64.  In so concluding, however, the Court also ruled that it was "not enough that a fraudster scheme to obtain money from a bank and that make a false statement." *Id.* at 362.  The Government must show "a relational component"—that the relationship between the end of achieving money or property from the bank and the means of making a false statement to a third party "is something more than oblique, indirect, and incidental." *Id.* at 362–63.  The "'by

5

means of' language is satisfied when . . . the defendant's false statement is the mechanism naturally inducing a bank (or custodian of bank property) to part with money in its control." *Id.* at 363. The Superseding Indictment alleges such a causal relationship. It alleges that Defendant made false statements to the SBA in order for MBE to become a non-bank PPP lender and thereby to obtain millions of dollars of capital from the Company and the Federal Reserve Bank of San Francisco and to obtain PPP lender fees. Dkt. No. 50 ¶ 1.

Defendant relies on *United States v. Berroa*, 856 F.3d 141, 147–48 (1st Cir. 2017), in which the First Circuit overturned, on *Loughrin* grounds, the mail fraud convictions of defendants who had obtained licenses to practice medicine through falsified applications to the Puerto Rico Board of Medical Examiners and then used those fraudulently obtained licenses to obtain payment for medical services and to issue prescriptions. The court found that there was insufficient evidence to support the conclusion that the defendants obtained money or property "by means of" their alleged fraud, based on the conclusion that "the defendants' alleged fraud in obtaining their medical licenses cannot be said to have 'naturally induc[ed]' healthcare consumers to part with their money years later." *Id.* at 149–50 (quoting *Loughrin*, 573 U.S. at 363. The Second Circuit has not addressed how close the relationship between the statement and the receipt of property must be to satisfy *Loughrin*. More pertinently, however, as the Government emphasizes, neither *Berroa* nor *Loughrin* addresses the specificity with which an indictment must charge the crime. *See* Dkt. No. 52 at 5. Both cases arose after trial, where the court could test the evidence presented by the Government against the charged crime and the verdict delivered by a jury. *Berroa* has since been distinguished by the Sixth Circuit in *United States v. Palma*, 58 F.4th 246 (6th Cir. 2023), in part on those grounds. In *Palma*, the Sixth Circuit emphasized that the disposition of the case was at "the pleading stage," where "the

6

government need only allege facts showing that the conspiracy as a whole had the object of using deception to deprive consumers of property" and where the court must "take the government's allegations as true and" was not permitted to "test the evidence behind [the government's] claims." *Id.* at 250.

The Superseding Indictment here contains enough detail to satisfy *Springer*. The Government is entitled to try to prove its case. The defense challenge to the indictment must fail.

## CONCLUSION

The motion to dismiss Count One of the Superseding Indictment is DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 32.

SO ORDERED.

Dated: February 17, 2023
      New York, New York

                                                  LEWIS J. LIMAN
                                          United States District Judge